Opinion delivered April 24, 1886.

[No. 3829.]

R. E. LEE v. THE STATE.

1. MURDER—MUTUAL COMBAT—EVIDENCE—CHARGE OF THE COURT.—See the opinion *in extenso* for evidence in a murder case which, tending to show a mutual combat between the defendant and the deceased, authorized the trial court to charge the jury in substance that, if the combat was mutual, and the defendant intended, and did use a deadly weapon, and did take the life of the deceased, he could not invoke the right of self defense.

2. SAME—JUSTIFIABLE HOMICIDE IN SELF DEFENSE.—But see the opinion for a special charge upon justifiable homicide in self defense, which defense being raised by the evidence, was erroneously refused.

APPEAL from the District Court of Collin. Tried below before the Hon. R. Maltbie.

The indictment charged the appellant with the murder of one Emmet Johnston, on the first day of January, 1884, in Collin county, Texas. The trial resulted in his conviction for manslaughter, and his punishment was affixed by the jury at a term of two and a half years in the penitentiary.

The opinion sufficiently discloses the case.

*Garnett & Muse* filed an able brief and argument for the appellant.

*J. H. Burts,* Assistant Attorney General, for the State.

HURT, JUDGE. This is a conviction for manslaughter. It appears from the record that the deceased, Emmet Johnston, and his brother, Eugene Johnston, W. E. Douglas, and the defendant, Lee, were in the store house of W. E. Douglas on the first day of January, 1884, sitting around the store. W. E. Douglas was

a cousin of the deceased. Lee said to the deceased: "How do you like the horse I let you have?" Deceased replied: "Very well." The defendant said: "Is he as good as I recommended him to be?" Deceased said: "He is not." Defendant said: "He is as good." Deceased said: "You are a liar." Defendant said: "Don't call me a liar." Deceased said: "You are a damned liar." The defendant then put his right hand in the side breast pocket of his over coat and rose from his seat, and, as he did this, deceased picked up a piece of ax handle, from fourteen to eighteen inches long, and rose from his seat, when defendant said: "You walk out of here with me!" They immediately started toward the door of the house, deceased in front and the defendant a few feet behind. The door being closed, deceased opened it and went out. Upon reaching the platform he turned, facing the defendant. Defendant continued to hold his hand in his pocket where he had placed it when called a d—d liar, until he was in the act of passing out of the door, when he drew therefrom a pistol, pointed it, and fired at the deceased just as the deceased struck him with the piece of ax handle. The blow and shot were almost simultaneous. Lee had his left arm elevated, and shot under it. The deceased fell where standing, the ball entering the head, over the right eye.

The above, in substance, is the testimony of Eugene Johnston, brother of the deceased. W. E. Douglas, cousin of deceased, gave a version, which is, in substance, the same as that given by Eugene Johnston up to the point when deceased picked up the ax handle. This witness says:

"Lee said: 'Don't call me a liar!' Deceased then said: 'You are a d—d liar!' and picked up a poker stick, which was a piece of ax handle about twenty inches long. Just as defendant said, 'don't call me a liar,' defendant ran his right hand into the breast pocket of his over coat, and rose from his chair and said, to deceased, 'Walk out of here with me!' Deceased said, 'all right,' and started towards the door. The door was closed at the time; the deceased opened the left side of the door and stepped out. The deceased raised his stick and struck, or was in the act of striking defendant, when he, the defendant, fired the pistol. Lee shot under his left arm, which was on a level with his head. Lee was leaning back a little when he shot. Deceased lived about two hours after the shot, and never spoke."

On cross-examination, this witness stated that the stick used by deceased, "was a common sized ax handle, such as are

usually bought, or kept in stores for sale; was seasoned, and of hickory wood, and did not have any knots in it."

By other witnesses it is made certain that before defendant shot the deceased had struck him with the ax handle, leaving a bruise across his left arm as wide as two fingers, and that, when struck, defendant was wearing three shirts, a dress coat and an over coat. These facts leave no doubt but that the blow was quite a severe one. It is also shown by Dr. Simms that this blow was given before the shot, because deceased, from the nature of the wound, would have been instantly paralyzed. The blow was of such force as to shiver the ax handle.

Under these facts, the court below instructed the jury the law applicable to a case in which the parties mutually entered into the combat; charging them, in effect, that if the combat was mutual, and defendant intended, and did use a deadly weapon, and did take the life of deceased, that he could not invoke the right of self defense. This charge is based upon the theory that it was the intention of the defendant to engage in a combat with the deceased with a deadly weapon, and hence the right of self defense could not be invoked even to save his own life, etc. This theory is presented by the evidence, and this principle of law was properly submitted to the jury.

But are the facts so conclusive in support of this theory as to preclude all other inferences? The deceased, his brother, and Douglas were in the house. Douglas was a cousin of the deceased, and it is evident that the deceased was the aggressor. He passed the first insult, and when requested not to call the defendant a liar, he not only repeated that defendant was a liar, but stated thad he was a *d—d liar*, at the same time picking up the ax handle. Douglas states in his testimony that the defendant ran his hand in his breast pocket and requested him to go out with him; that the deceased said, "all right" and led the way out of the house, the defendant following.

Now up to this point, do the facts show beyond all question that it was the intention of the defendant to engage in a fight or combat with the deceased? May he not have believed that it was the purpose of the deceased to use the ax handle upon him, and, thus believing, prepared to defend himself out, rather than in, the house, where the deceased was in the presence of his brother and cousin? He had been given the lie, yea, the "*d—d lie*," by deceased; he saw deceased seize the ax handle, whereupon he placed his hand upon his pistol. This he had the right

to do, for the deceased was a much larger and stronger man than he. Now, with these facts before him, had he not the right to believe that it was the intention of the deceased to assault him with the ax handle, and so believing, preferred, if the conflict was inevitable, to have it occur out of the house, away from the relatives of the deceased, and where others could see and know the facts?

We think this view of the case might be taken, and, if so, the facts do not render it absolutely certain that this was a mutual combat. This was the theory of the defense, and in order that it might be presented to the jury, the counsel for defendant requested the following charge, which was refused.

"If you should find and believe from the evidence that the defendant did not in fact agree to go out of the house with the deceased, and fight with him, but that the object and purpose of defendant was to free himself from the danger or supposed danger which then environed him, and you further believe from the evidence that the deceased, immediately upon getting out of the house in which said parties then were, by any act done, or by words coupled with such act, induced the defendant to believe that he, the deceased, was then in the act, or was about to inflict either death or serious bodily injury upon the defendant with an ax handle, and you further believe from the evidence that such ax handle was such an instrument that, in the mode and manner of its threatened use, was capable of inflicting death, or was capable of inflicting serious bodily injury upon the defendant, and you further believe from the evidence that at the time it reasonably appeared to the defendant that it was then the intention of deceased to inflict death or serious bodily injury upon him by deceased, then, in such case, the defendant's right of self defense would not be abridged or compromitted in any manner, and if the defendant, under such circumstances, shot and killed the deceased, he would be justifiable under the law, and you will find him not guilty."

We are of the opinion that this charge should have been given, and because of its refusal the judgment is reversed and the cause remanded.

*Reversed and remanded.*